# 7529

## STATE OF LOUISIANA

### PARISH OF ORLEANS

------------------------------------------------

JOHN EGLIN : No. 7529

**VS.**

HIPPOLITE or HYPOLITE RUFIN : COURT OF APPEAL

------------------------------------------------

O P I N I O N

Max Dinkelspiel, Judge.

------------------------------------------------

This suit presents the case of a party purchasing at an auction sale advertised in the newspapers of this city substantially as follows:

That defendant was retiring from the dairy business; that as fine a lot of cows for dairy purposes would be sold as ever put up at auction; that the auction would be conducted by Louis J. Sehiro, and the sale take place December 4, 1917, at defendant's dairy, and that Sóhiro advertises only that which is so.

The advertisement appeared in the Times-Picayune, of this city. Plaintiff attended the sale on the day in question and purchased 21 head of cows, for the price and sum of $1234.00. Each particular cow was sold, not in globo, but separately. The following day, December 5, 1917, a tuberculin test was made, and on December 6th 16 of the cows reacted to the test and were found to be tuberculer, ordered placed in quarantine on the premises of defendant, by authority of the Live Stock Sanitary Board, as created by Act 274 of the General Assembly of 1908, and this board gave notice to defendant that the infected cattle could not be moved from the premises except for the purpose of immediate slaughter.

In order to minimize damage, with reservation of the respective rights of their clients, the lawyers agreed to an immediate slaughter of the 16 tuberculer cows, and also to a sale by auction of the 5 cows that did not react - that is, that were found not to be infected. The 16 condemned cows were slaughtered and the 5 non-condemned sold anew. The price realized from the slaughter of the 16 infected cows was $315.53, and from the sale of the 5 non-infected cows $180.00.

■

380

There is, therefore, but one issue raised in the answer of the defendant, and that is whether or not the auctioneer did or did not announce from the block, at the time the cows were sold, that the sale would be without warranty, save as to title, and, if such an announcement was made, was warranty against redhibitory vices excluded thereby?

The cows were advertised and sold under the advertisement as dairy cows. Tuberculosis is not such a vice as could have been discovered by a simple inspection. The article of the Civil Code touching this question is Article 2520, reading as follows:

> "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

In the earlier decisions, under the old Article 2496 (now 2520), we find, in the case of Melancon v. Robichaux, 17 La. Reports, page 27 (quoting from the syllabus):

> "Where the thing sold turns out to be so defective that had the defects been made known to the purchaser he would not have bought, the sale will be rescinded."

In the 18th La. Reports, the case of Turner and Renshaw v. Wheaton et al., reading from the syllabus, at page 37:

> "The exclusion of warranty in a sale does not absolve the vendor from the obligation of disclosing redhibitory vices not apparent."

In the 10th La. An. Reports, J. E. Robertson et al. v. Sarah Wallace, Administratrix, at page 214, - again quoting from the syllabus:

> "When a sale of slaves is made without any declaration on the subject of warranty, with the statement at the time that they had been burnt, but accompanied by the further statement that they had recovered, the sale must be considered as made subject to the usual warranties against redhibition."

■

381

In the 18th La. An. Reports, at page 133, - Widow A. Morphy v. P. C. Blanchiel, - we find:

> "Redhibition is called the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

In the 121 La. Reports, at page 72, the case of Iberia Cypress Co. Ltd. v. Von Schoeler, which was a suit on a note of $2,000.00, payable at the First National Bank of Franklin, Louisiana, with 6% interest, etc., the defense being reduction of price on account of redhibition, the syllabus reads:

> "Where the purchaser of a steam tug sued in reconvention for reduction of the price to the extent of $1,000.00, on account of concealed defects in the hull and machinery of the boat, HELD, that having elected to keep the vessel, he cannot recover for repairs made thereon, or for damages, but is restricted to his claim for reduction of the price.
> "In a suit for reduction of price, the responsibility of the bona fide vendor is measured by the difference in value between a sound and unsound article." (Quoting authorities).

In the case of William Parairque v. Jaetano Ortolano, to be found in the Court of Appeal Reports, Vol. 13, p. 165, the court says, quoting Civil Code, Art. 2532:

> "If the thing affected with the vices has perished through the badness of its quality, the seller must sustain the loss."

Again:

> "When the disease has manifested itself after three days, the burden of proof is on the buyer". (Quoting authorities).

Under the articles of the Civil Code, and particularly Article 2520, and the authorities, there can be no doubt but what the 16 head of cattle ordered slaughtered by the Board of Health under the law were infected with tuberculosis. The 5 other head were free of the disease, and, being sold under an agreement between the parties, ~~the price of $180.00 which they brought and about which there is no contention~~ *the loss upon these five - say (320 - 1803@$140,* must be deducted from the total

amount plaintiff paid for the cattle at the sale, towit, $1234.00, leaving a balance of $1054.00 which the plaintiff is entitled to be reimbursed, under the agreement made between the parties.

It is therefore ordered, adjudged and decreed that the judgment of the court a quo be annulled, avoided and reversed; and, proceeding to render such judgment as should have been rendered. it is further ordered that the plaintiff, John Eglin, recover from the defendant, Hippolite or Hypolite Rufin, the full sum of $1054.00, with costs in both courts.